IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

-------------------------------------------------- :
UNITED STATES OF AMERICA          : CASE NO. 1: 09 CR 00145
                                  :
                       Plaintiff  :
                                  : <u>MEMORANDUM OF OPINION AND</u>
            -vs-                  : <u>OMNIBUS ORDER</u>
                                  :
                                  :
ALEX REESE, JR., et al.,          :
                                  :
                     Defendants.  :
-------------------------------------------------- :


UNITED STATES DISTRICT JUDGE LESLEY WELLS


On 25 March 2009, the government filed a two count Indictment against

defendants Alex Reese, Jr. ("Mr. Reese"), Jeffrey Hampton ("Mr. Hampton"), Sidney

Garth ("Mr. Garth"), and Hubert Hayes ("Mr. Hayes"), charging each with conspiracy to

possess with intent to distribute and distribute cocaine along with an allegation of use

and possession of a firearm, in violation of 21 U.S.C. §§ 841 & 846 and 18 U.S.C. §

924(c).  (Doc. 9).

Before the Court are a series of motions from each of the four defendants.  Mr.

Garth and Mr. Hayes have moved to suppress statements they made to officers (Docs.

31, 35); Mr. Hampton moves to join Mr. Garth's motion (Doc. 39).  Mr. Garth and Mr.

Reese (Docs. 33, 30) move to dismiss the indictment; Mr. Hampton (Doc. 39) and Mr.

Hayes (Doc. 41) separately move to join those motions.  Mr. Hampton (Doc. 37) moves

to preclude sentencing entrapment.  Mr. Reese, Mr. Hayes, and Mr. Garth (Docs. 29,

32, 43) move to sever the trial.  Mr. Garth and Mr. Hayes (Docs. 36, 40) move for

supplemental discovery; Mr. Hampton (Doc. 39) moves to join Mr. Garth's motion for

supplemental discovery.  Mr. Hampton and Mr. Hayes move for an order directing the

government to reveal agreements made with witnesses.  (Docs. 38, 42).  Mr. Hayes and

Mr. Garth (Docs. 23, 26) move for a Bill of Particulars.  Mr. Hayes and Mr. Garth move

for production of Brady/Giglio/Jenks material.  (Docs. 19, 20, 21, 22, 23, 24).  The

government has filed responses to each of these briefings from the defendants.  (Docs.

46, 48).

After a review of the background in this matter, the Court will consider each of

the defendants' motions in turn.


**Background**

According to Mr. Garth, the investigation of the defendants began when Bureau

of Alcohol, Tobacco, Firearms, and Explosives (ATF) Special Agent William Hall

interviewed a confidential informant (CI) regarding alleged illegal activities undertaken

by Mr. Hampton and Mr. Reese.  (Doc. 33).  The government contends that in early

February 2009, the confidential informant, working on behalf of ATF, met with Mr.

Reese to gauge his interest in conducting a "home invasion" style theft of multiple

kilogram quantities of cocaine.  The government notes that "home invasion" robberies

2

generally involve a group of individuals stealing drugs and/or money from a residence known for storing drug contraband and illegal proceeds.  "Home invasions" often involve the use of force and firearms.

The government has distributed to defense counsel audio recordings of a meeting between Mr. Reese and the CI.  In this meeting with Mr. Reese, the CI allegedly told Mr. Reese that he knew of someone looking for a "crew" to perform a "home invasion" on a residence in which a large quantity of drugs would be stashed. The government contends that cell phone records, also provided to defense counsel, indicate that Mr. Reese expressed a desire to carry out the "home invasion", and to recruit other persons to conduct the robbery.  (Doc. 46).  The government notes that the majority of Mr. Reese's cellular telephone calls were recorded.

According to the government, after a series of phone calls, the CI introduced Mr. Reese to ATF Special Agent Gomez.  Special Agent Gomez used the name "Lokito" in his interactions with the defendants.  The government maintains that, after another series of phone calls, Mr. Reese and "Lokito" met on 18 February 2009, at a motel in Middleburg Heights, Ohio.  In this meeting, also recorded,  "Lokito" advised Mr. Reese that he was involved in cocaine smuggling and storage and knew of a house with a likely amount of 10-15 kilograms of cocaine.  According to the government, Mr. Reese assured "Lokito" that he had been involved with 3 to 5 prior "home invasions" and that he'd "been doing this for a long time."  (Govt., Doc. 46).  The government, further, notes that Mr. Reese indicated he was capable of performing the home invasion but it would require planning and the addition of two or three other individuals besides himself. When pressed by the Special Agent, according to the government, Mr. Reese assured

3

"Lokito" that he was capable of handling the robbery.

The government notes that on 19 February 2009, "Lokito" and Mr. Reese agreed to meet in a motel in Cleveland, Ohio. Mr. Reese brought Mr. Hampton to this meeting, which the government audio and video recorded. As he had explained to Mr. Reese the day prior, "Lokito" characterized himself as a drug-courier who sought a group of individuals to rob a known, and guarded, drug house of quantities of cocaine, and to divide the proceeds. The government relates that the record indicates that both Mr. Reese and Mr. Hampton questioned "Lokito" regarding the number of people expected to be guarding the cocaine, whether these people would be armed, how they would restrain the people inside the house, and when the shipment of cocaine was likely to arrive. The government avers, further, that Mr. Reese and Mr. Hampton discussed the manner in which they would rob the "stash house," considering methods such as pretending to be police, using badges, and yelling "search warrant' upon entering the house. The government represents that the audio and video recording of the meeting conveys Hampton and Reese touting their experience, assuring "Lokito" they were familiar with what measures they needed to take to rob the "stash house", and confirming to "Lokito" that they would have to hit the house with guns "blazing."

According to the government, "Lokito" contacted Mr. Reese by telephone on 4 March 2009, to indicate that the drugs were at the house. Mr. Reese showed up at the predetermined location in a vehicle with Mr. Hampton, Mr. Garth, and Mr. Hayes to meet "Lokito". "Lokito" and Mr. Reese drove together in "Lokito's" car for several blocks, with Mr. Hampton, Mr. Garth, and Mr. Hayes following in the vehicle in which all four defendants originally arrived. At the new location Mr. Garth and Mr. Hayes got into

4

"Lokito's" vehicle and spoke with him.  According to the government, "Lokito" asked each of the defendants if they were willing to steal the cache of cocaine, if they knew what they were about to accomplish, and if they wanted to carry through with the planned robbery.  "Lokito" discussed splitting the cocaine proceeds.

Shortly following their encounter with "Lokito," the defendants were arrested by ATF agents and members of the Cleveland Police Department.  A search of the vehicle in which the four defendants arrived yielded: a Century Arms International .308 caliber semiautomatic rifle loaded with an additional magazine containing 20 rounds of ammunition; a Mossberg 12 gauge pistol-grip shotgun loaded with 4 rounds of ammunition; three cellular phones; a black knit hat; and, outside the vehicle a Taurus .9mm semiautomatic pistol loaded with 10 rounds of ammunition and a pair of black gloves.

At the scene of their arrest, the defendants were handcuffed and placed into a police van.  According to Mr. Garth, initially he and Mr. Hayes were placed into the van, where they were alone together for approximately eight minutes.  The van was equipped with audio and video capabilities and Mr. Garth's and Mr. Hayes' conversation and movements were recorded.  Mr. Hampton was then placed in the vehicle along with Mr. Garth and Mr. Hayes.  These three defendants conversed in the vehicle for approximately five minutes, according to Mr. Garth.  (Doc. 35, p. 2).  Finally, according Mr. Garth, Mr. Reese was placed into the van with the three other defendants, at which point all four defendants conversed.  Id.  According to Mr. Garth, at some point Mr. Hayes was removed from the vehicle and the remaining three defendants  – Garth, Hampton and Reese – continued their conversation for nearly an hour.  Mr. Garth

5

maintains that the agents stopped recording when the defendants ceased talking and drive the defendants from the scene of arrest to the Cleveland Police Department for booking and interrogation."  (Doc. 35 p. 2).

The government does not go into great detail regarding the vehicle into which the four defendants were placed following their arrest at the scene.  The government does note that the vehicle was a van belonging to the United States Marshal service, that it contained "an audio and video recording device," and that "several defendants spoke to each other inside the van regarding their arrest."  (Doc. 48).

The government also maintains that each defendant was subsequently given his <u>Miranda</u> warnings and questioned whether he wished to make a statement.  The government notes that both Mr. Hayes and Mr. Hampton did provide post-arrest statements.  Importantly, the government maintains that Mr. Garth did not provide any post-arrest statements.  Instead, the government contends that after Mr. Garth requested an attorney he continued to talk to the officers and did not make any incriminating statements, but rather, answered several routine booking questions.

**Motions for Suppression of Evidence**

Both Mr. Hayes (Doc. 31) and Mr. Garth (Doc. 35) petition the Court for an order suppressing any and all statements made to law enforcement agents.  As a threshold matter, Mr. Hampton (Doc. 39) has moved, without explanation, to join Mr. Garth's Motion to Suppress Statements.  The Court will strike Mr. Hampton's petition, given the clear absence of sufficient and specific factual allegations from Mr. Hampton regarding his petition to join Mr. Garth's Motion to Suppress.

6

**Mr. Garth's Motion to Suppress**

Mr. Garth argues for the suppression of his statements on two grounds: first, the recording of his statements while in the U.S. Marshal's van violated his "constitutional rights" and Title III of the Omnibus Crime Control and Safe streets Act of 1986, 18 U.S.C. § 2510, et seq.,[1] because he had a reasonable expectation of privacy while in the vehicle; second, the statements he made to law enforcement agents while at the Cleveland Police Department occurred after he invoked his right to counsel.

Mr. Garth moves to suppress "all statements made by Defendant to any and all law enforcement agents."  (Doc. 35, p. 1).  Construed narrowly, this request would limit Mr. Garth's suppression request to any statements made during his interview at the Cleveland Police Department.  The government contends they obtained no statements from Mr. Garth after he received his Miranda warnings and invoked his right to an

---

[1]Title III prohibits unauthorized interception and disclosure of oral communications. 18 U.S.C. § 2511.  Title III defines "oral communication" as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such exception, but such term does not include any electronic communication." 18 U.S.C. § 2510(2).

If Mr. Garth had a reasonable expectation of privacy then his "oral communication" with his co-defendants falls within the ambit of Title III. The statutory (Title III) and constitutional (Fourth Amendment) test is the same: whether a reasonable or justifiable expectation of privacy exists.  In the instant case, the Fourth Amendment determination of a reasonable expectation of privacy and the federal wiretap analysis overlap. 18 U.S.C. § 2510(2).  The legislative history of this section demonstrates that Congress intended this definition of oral communication to parallel the reasonable expectation of privacy test set out in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). See S. REP. NO. 90-1097 (1968), reprinted in 1968 U.S.C.C.A.N. 2112, 2178; United States v. Turner, 209 F.3d 1198, 1200 (10th Cir. 2000); United States v. McKinnon, 985 F.2d 525, 527 (11th Cir. 1993).

attorney.  (Doc. 48, p. 6).

Construed broadly, Mr. Garth's request to suppress any statements made to law enforcement agents would also include any recorded statements he made to his co-defendants at the scene of their arrest while seated in the United States Marshal's van. Those statements were not, strictly construed, made to law enforcement agents but, rather, uttered in private.  This is the gravamen of Mr. Garth's suppression petition – that his expectation of privacy was violated when his statements to his co-defendants were recorded during the time the defendants spent in the van.

"The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.' " California v. Ciraolo, 476 U.S. 207, 211 (1986) (quoting Katz v. United States, 389 U.S. 347, 360 (1967).  The constitutional question is "whether the person invoking its [Fourth Amendment] protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action."   Smith v. Maryland, 442 U.S. 735, 740 (1979).  Toward this end, Mr. Garth must, first, show that his conduct exhibited a subjective expectation of privacy and, second, show that his subjective expectation of privacy is one that society is willing to recognize as reasonable.   Smith, 442 U.S. at 740, 99 S.Ct. at 2580.

Courts have consistently held that persons placed in the back seat of a police car, whether pre-arrest or post-arrest, have no reasonable expectation of privacy when their conversations are recorded.[2]  As the Eighth Circuit has observed,

_____

[2]As the U.S. Supreme Court notes in Katz, 389 U.S. at 351, "[t]he Fourth Amendment protects people, not places.  What a person knowingly exposes to the

8

> A marked police car is owned and operated by the state for the express purpose of ferreting out crime. It is essentially the trooper's office, and is frequently used as a temporary jail for housing and transporting arrestees and suspects.  The general public has no reason to frequent the back seat of a patrol car, or to believe that it is a sanctuary for private discussions. A police car is not the kind of public place, like a phone booth where a person should be able to reasonably expect that his conversation will not be monitored.  In other words, allowing police to record statements made by individuals seated inside a patrol car does not intrude upon privacy and freedom to such an extent that it could be regarded as inconsistent with the aims of a free and open society.

United States v. Clark, 22 F.3d 799, 801 (8th Cir. 1994) (concluding that a person does not have a reasonable or legitimate expectation of privacy in statements made to a companion while seated in a police car);  United States v. McKinnon, 985 F.2d 525, 527-8 (11th Cir. 1993);  United States v. Jones, 2006 WL 2583311 (S.D. Ohio 2006) (No subjective expectation of privacy in the back seat of a police cruiser and no reasonable

---

public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."

    In this instance, the place of the conversations – handcuffed arrestees placed into a United States Marshal's van at the scene of the arrest awaiting transportation to the police station – cannot be divorced from the people having the conversations.  See, e.g., Minnesota v. Carter, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) ("The Fourth Amendment protects people, not places. But the extent to which the Fourth Amendment protects people may depend upon where those people are."); United States v. Mankani, 738 F.2d 538, 542 (1st Cir. 1984) ("Of course, the fact that people are protected does not mean that place has no bearing on one's reasonable expectation of privacy. Plainly it does. Those who claim their privacy has been unlawfully invaded do not live in a vacuum."); United States v. Burns, 624 F.2d 95,100 (10th Cir. 1980) ("Legitimate privacy expectations cannot be separated from a conversation's context. Bedroom whispers in the middle of a large house on a large, private tract of land carry quite different expectations of privacy, reasonably speaking, than does a boisterous conversation occurring in a crowded supermarket or subway."); see also, e.g., United States v. Harrelson, 754 F.2d 1153, 1169-70 (5th Cir. 1985) (finding no legitimate expectation of privacy for conversations held in a prison setting).

expectation of privacy where the person was placed in the police cruiser after the officers placed him under arrest and *Mirandized* him);  United States v. Turner, 209 F.3d 1198, 1201 (10th Cir. 2000) (Back of a police car is not a place where individuals can reasonably expect to communicate in private); United States v. Dunbar, 553 F.3d 48 (1st Cir. 2009) (No reasonable expectation of privacy in communications between husband and wife seated alone and recorded without their knowledge in the back seat of a patrol car);  U.S. v. Hernandez-Mendoza, --- F.3d ----, 2010 WL 1286749

(8th Cir. 6 April 2010) (Arrestees' recorded conversations in trooper's car were not the functional equivalent of custodial interrogation and the individuals had no reasonable expectation of privacy)

In this instance, Mr. Garth, Mr. Hayes, Mr. Reese, and Mr. Hampton were arrested, handcuffed, and placed in a United States Marshal's van at the scene of their arrest, awaiting transport to the Cleveland Police Department for questioning.  By all accounts, the arrest scene was hardly quiescent, beginning as it did with a SWAT-style "flash-bang" device to divert the attention of the defendants, followed by the introduction of the Cleveland SWAT, the ATF equivalent of SWAT, police dogs, a helicopter, and over 30 law enforcement officers.  (Doc. 48, p. 4).

Given the totality of these circumstances, none of the defendants could reasonably expect that their conversations were private merely because they were alone in the van, handcuffed and awaiting transportation to the Cleveland Police Department for questioning.  Accordingly, the recording of those conversations, in this instance, does not offend the Constitution.  Mr. Garth's motion to suppress will be denied with the further understanding, from the government's representation, that it

10

obtained no statements from the defendant after he invoked his right to counsel at the police station.

### Mr. Hayes' Motion to Suppress

Mr. Hayes petitions the Court for an order "suppressing any and all statements, video recorded statements and derivative evidence" made by the Defendant following his arrest. Mr. Hayes specifically grounds his objections to the use of any statements he made to law enforcement on the assertion that he was "simply a passenger in the vehicle detained for alleged suspicious criminal activity." (Doc. 31, p.6). Starting from this legal presumption, Mr. Hayes concludes that his "mere association with others in the vehicle" does not provide the reasonable cause necessary to search or detain him during an investigative traffic stop. (Doc. 31 p. 4).

Mr. Hayes notes that he was not part of the numerous recorded telephonic communications initiating and planning the "home invasion" between Mr. Reese, Mr. Hampton, the government agent and the government's confidential informant. Instead, Mr. Hayes maintains that he was arrested for merely being in the same vehicle as Mr. Reese, Mr. Hampton and Mr. Garth.

The background of this matter simply does not warrant interpreting the encounter between the four defendants and the police officers affecting the arrest as "a temporary involuntary detention" or Terry stop which must be predicated upon "reasonable suspicion." United States v. Bueno, 21 F. 3d 120, 123 (6th Cir. 1994). Instead, this was not a Terry stop that escalated into an arrest but, rather, simply an outright arrest predicated on probable cause.

There is no precise formula for the probability required for probable cause.

11

"Somewhere between 'less than evidence which would justify ... conviction' and 'more than bare suspicion,' probable cause is satisfied.... The precise point is indeterminate." United States v. Prandy-Binett, 995 F.2d 1069, 1070 (D.C.Cir. 1993).  See also Draper v. United States, 358 U.S. 307, 313 (1959).  The standard is to be met by applying a "totality-of-the-circumstances analysis."  Illinois v. Gates, 462 U.S. 213, 234 (1983).

The information provided to the police by an ATF confidential informant and an ATF undercover agent lays the foundation for, in this instance, the basis of probable cause for the police officers to believe that the four defendants were about to initiate a "home invasion" robbery of a "stash house."  The uncontroverted evidence indicates that the ATF undercover agent met with Mr. Reese and Mr. Hampton at a motel in Cleveland, Ohio on 19 February 2009.  Further evidence indicates that, immediately prior to initiating the "home invasion", the ATF undercover agent received affirmative responses from Mr. Garth, Mr. Hayes, Mr. Hampton and Mr. Reese, on the question of whether or not they were prepared to steal what the Agent represented as twenty kilograms of cocaine.  The government indicates that at the time of his arrest Mr. Hayes was wearing a black ski mask and black clothing, while Mr. Garth was wearing black clothing and a black knit hat.

The four defendants were arrested in the white GMC Yukon they arrived in together the evening of 4 March 2009.  In their search of the vehicle, the ATF agents found the following weapons: a .308 caliber semiautomatic rifle loaded with an additional magazine containing 20 rounds of ammunition, a 12 gauge pistol-grip shotgun loaded with 4 rounds of ammunition.  Outside the vehicle, the ATF agents found a .9mm semiautomatic handgun with 10 rounds of ammunition.

12

Mr. Hayes, further, argues that the statements he made following his arrest should be suppressed pursuant to the decisions in Farris and Miranda because they were made involuntarily.  Mr. Hayes maintains he did not feel he could disobey the officers' "show of authority" and refuse to answer their questions.  Further, Mr. Hayes contends that the officers' repeated inducements, that he should "help himself" by making a statement or he would be "facing life" in prison, were improper.  Mr. Hayes contends that the officers' inducements went beyond acceptable "limited assurance" and caused the Defendant's will to be overborne.  As a result, Mr. Hayes concludes that his statements "were not constitutionally voluntarily and intelligently made."

The government contends the audio and video evidence indicates that Mr. Hayes received and understood the Miranda warnings.  The government concedes that, while Mr. Hayes was given his Miranda warnings at the scene of the arrest, the recording equipment malfunctioned and no evidence remains.  The government maintains Mr. Hayes, again, received the Miranda warnings when he was interviewed by ATF Task Force Officers Habeeb and Alexander in an interview room at the Cleveland Police Department.  The government acknowledges that Mr. Hayes was handcuffed during the interview, but that he was able to, and did, move about the interrogation room freely. The government does acknowledge that Task Force Officers Habeeb and Alexander advised Mr. Hayes that his criminal record would place him in prison for life and asked the defendant if he wanted to help himself.  Relying upon the video-taped record, the government further maintains that Mr. Hayes freely spoke with the officers for one hour and twenty-three minutes, during which time he did not invoke his rights or ask the officers to cease their questioning of him.

13

The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself."  U .S. Const. amend. V.  The privilege against self-incrimination, applicable to the States through the Fourteenth Amendment, Malloy v. Hogan, 378 U.S. 1, 8 (1964), forbids the State's use of statements, "whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."  Miranda v. Arizona, 384 U.S. 436, 444 (1966).[3]

Before a confession is admissible, it "must be free and voluntary; that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence."  Bram v. United States, 168 U.S. 532, 542-43 (1897); see also Colorado v. Connelly, 479 U.S. 157, 167 (1986) (holding that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment").  An admission is deemed to be coerced where the conduct of law enforcement officials was such as to overbear the accused's will to resist, thus bringing about a confession not freely self-determined.  Beckwith v. United States, 425 U.S. 341, 347-48 (1976).  The ultimate question in coerced confession cases is whether the confession was voluntary, or in other words, "the product of an essentially free and unconstrained choice by its maker."  Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973).

---

[3]The facts of this matter do not implicate the recent United States Supreme Court decision in Berghuis v. Thompkins, __ S.Ct. __, 2010 WL 2160784 (1 June 2010).

14

When a defendant claims that a confession was coerced by law enforcement officers, the government bears the burden of proving by a preponderance of the evidence that the confession was voluntary.  United States v. Hunter, 332 Fed. Appx. 285, 289 (6th Cir. 2009); United States v. Ostrander, 411 F.3d 684, 696 (6th Cir. 2005); United States v. Johnson, 351 F.3d 254, 260 (6th Cir. 2003); United States v. Mahan, 190 F.3d 416, 422 (6th Cir. 1999).

There is no bright-line rule for determining whether a suspect's confession or incriminating statement was voluntarily given.  Voluntariness is determined by reviewing the totality of the facts and circumstances in which the confession was made to law enforcement officers.  United States v. Rutherford, 555 F.3d 190, 195 (6th Cir.2009); Hunter, 332 Fed. Appx. at 288- 89; Johnson, 351 F.3d at 260.  The circumstances to be considered include the defendant's age, level of education and intelligence, physical condition and emotional state at the time of the confession, awareness of his or her legal rights, whether he or she was advised of his or her Miranda rights, the length of questioning, the use of physical punishment, and the deprivation of food, water, sleep, or other creature comforts.  Jackson v. McKee, 525 F.3d 430, 433-34 (6th Cir.2008); Hunter, 332 Fed. Appx. at 289; United States v. Wrice, 954 F.2d 406, 411 (6th Cir. 1992).

To establish that a confession was involuntary due to police coercion, the Sixth Circuit requires three elements: (1) the police activity was objectively coercive; (2) the coercion in question was sufficient to overbear the defendant's will; and (3) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the confession or incriminating statement.  Rutherford, 555 F.3d at 195; see also

15

Dickerson v. United States, 530 U.S. 428, 434 (2000).

The uncontested evidence indicates that Mr. Hayes was provided his Miranda warnings and that he, subsequently, spoke with ATF Task Force Officers Habeeb and Alexander for approximately one hour and a half.  This Court must consider the question of whether Mr. Hayes' statements should be suppressed as involuntary in an instance in which the Officers, allegedly, "threatened Hayes that he was 'facing life' and he was there to 'help himself' by speaking with them." (Doc. 31, Hayes Motion to Suppress, p. 7).[4]

The Sixth Circuit recognizes that  "[P]romises of leniency may be coercive if they are broken or illusory."  United States v. Johnson, 351 F.3d 254, 262 (6th Cir.2003).  However, a statement about possible leniency upon cooperation is not generally impermissible.  United States v. Cruse, 59 Fed. Appx. 72, 78 (6th Cir. 2003).

Further, assertions that a defendant may face a long-term sentence are not impermissible and do not render defendant's comments, confessional or otherwise, involuntary.  See United States v. Hocking, 860 F.2d 769, 774 (7th Cir. 1988) (FBI agents' threats that defendant faced criminal charges and imprisonment did not make defendant's confession involuntary).  See also United States v. Mendoza-Cecelia, 963 F.2d 1467, 1475 (11th Cir.) (suggestion by law enforcement that defendant might suffer

---

[4]Mr. Hayes also maintains the Officers did not execute a Miranda waiver "form prior to the defendant's recorded statement.  (Hayes Motion to Suppress, p. 7).   Although a written Miranda waiver is a helpful evidentiary device, the United States can satisfy its burden without producing a written waiver.  See United States v. Miggins, 302 F.3d 384, 397 (6th Cir. 2002)(finding "no authority" for the proposition that a "written waiver is necessary to establish a knowing, intelligent and voluntary waiver of Miranda rights").

16

while serving long prison sentence did not make ensuing statement involuntary), <u>cert. denied</u>, 506 U.S. 964 (1992); <u>United States v. Nash</u>, 910 F.2d 749, 752-53 (11th Cir. 1990) (officer's discussion of realistic penalties for cooperative and non-cooperative defendants did not make defendant's confession involuntary); <u>United States v. Meirovitz</u>, 918 F.2d 1376, 1379 (8th Cir. 1990) (agents' threats of long prison sentence if defendant failed to cooperate did not make statements involuntary), <u>cert. denied</u>, 502 U.S. 829 (1991).

The ATF Task Force Officers' alleged statements do not amount to improper inducements or coercion as a matter of law.  Improper inducements or coercion are not present when the only benefit pointed out to Mr. Hayes – that he should "help himself" by making a statement to the officers – is that which flows naturally from a truthful and honest course of conduct.  The Officers assertion that Mr. Hayes might face life in prison merely reflected the defendant's extensive criminal record.  The Officers were not "leading the defendant to believe that he ... will receive lenient treatment when this is quite unlikely," <u>United States v. Little</u>, 9 F.3d 110 (6th Cir. 1993) (<u>quoting</u> <u>United States v. Long</u>, 852 F.2d 975, 978 (7th Cir. 1988)).  Rather, the Defendant does not allege the Officers made any offer of a reduced penalty whatsoever.  As such, the allegation that the Officers repeatedly suggested that Mr. Hayes help himself by making a statement does not amount to an inducement of any kind.

Further, the Defendant does not allege that he was "objectively coerced," that he was threatened in any physical manner or that the Officers physically mistreated him. Mr. Hayes does not contest the government's assertion that, while handcuffed, he was able to move about the interrogation room and was offered water during the course of

the interview.  Nor does he contend that his interview was unduly lengthy and oppressive, lasting as it did, only one hour and twenty-three minutes.  Moreover, Mr. Hayes' age, level of education, and experience with the criminal justice system, suggest that his will was not easily overborne during this police interrogation.  As a matter of law, the record does not support a finding that ATF Task Force Officers Habeeb and Alexander performed a coercive interrogation.

Accordingly, the Court will deny Mr. Hayes' motion to suppress the statements he made at the scene of his arrest and during his interrogation.


**Motions to Dismiss**

Defendants Garth and Reese petition the Court for dismissal of the indictment. (Docs. 30, 33).  Mr. Garth maintains dismissal is warranted predicated on two assertions: legal impossibility, and a violation of constitutional due process predicated on a finding of outrageous government conduct. (Doc. 33).  Mr. Reese contends dismissal is warranted upon similar due process concerns found in a theory of entrapment.  Defendant Hayes seeks to join in Mr. Garth's and Mr. Reese's separate motions to dismiss predicated upon Mr. Garth's theory of outrageous government conduct.  (Doc. 41).  In a three sentence petition, Mr. Hampton also seeks to join both Mr. Garth's and Mr. Reese's separate motions to dismiss, but provides the Court no argument upon which to base his contention that the indictment should be dismissed as against him.  (Doc. 39).  The Court will grant Mr. Hayes' petition to join the motion to dismiss, but must deny Mr. Hampton's petition to join as without foundation.

18

## A. <u>Legal Impossibility</u>

Although couched as a due process argument, Mr. Garth and Mr. Reese impliedly contend that the conspiracy in this case is a legal impossibility.  Indeed, at the base of Mr. Garth's "outrageous government conduct defense" (Doc. 33, p. 3) is his assertion that the "two count indictment . . . is predicated on a nonexistent crime.  S/A Gomez manufactured and concocted a crime that would not have been committed if S/A Gomez did not create the sham.  Gomez wanted defendants to agree to burglarize an imaginary drug house for imaginary drugs.  Drugs and a drug house never existed throughout the entire undercover operation.  This court is presented with a case wherein the crime is completely conceived and contrived by government agents."  (Doc. 33, p. 5).

The government charges each of the defendants with conspiracy under 21 U.S.C. § 846, requiring proof beyond a reasonable doubt that: (1) two or more persons conspired or agreed to commit the crime of possession with intent to distribute a controlled substance; (2) the defendant knowingly and voluntarily joined the conspiracy; (3) a member oft he conspiracy did one of the overt acts described in the indictment for the purpose of advancing or helping the conspiracy.

This Circuit has established definitively in the context of the federal drug laws that impossibility is not a defense.  In <u>United States v. Reeves</u>, 794 F.2d 1101 (6th Cir.1986), the Circuit determined that, in light of the congressional desire to enforce federal drug laws as fully as possible, the fact that the defendant did not actually possess or gain possession of cocaine (but instead possessed an innocuous substance) was irrelevant to the defendant's conviction for attempt to distribute and

possess cocaine.  The Circuit Court reasoned that 'attempt' requires that the government establish: (1) an intent to engage in criminal activity, and (2) the commission of an overt act constituting a substantial step towards the commission of the substantive offense.  Id. at 1104.  Since neither element required the completion of the substantive offense, nor necessitated that the material object of the defendant's desires (cocaine or a sham substance) actually be illegal, the Court concluded that the defendant was guilty of attempted distribution and possession of cocaine.  Id. at 1106.  See also United States v. Yang, 281 F.3d 534, 543 (6th Cir. 2002).

The basis of the conspiracy charge is the agreement to commit the unlawful act, and not the unlawful act itself.  Because the "illegality of the agreement does not depend upon the achievement of its ends," it is irrelevant that it may have been objectively impossible for the conspirators to commit the substantive offense.  United States v. Yang, 281 F.3d at 544 (quoting United States v. Hsu, 155 F.3d 189, 203 (3d Cir. 1998)).  Indeed, Courts recognize the mutual understanding or agreement itself as the element of the crime, not the object of the scheme.  See id.  See also United States v. Schaffer, 586 F.3d 414, 422-23 (6th Cir. 2009).

## B. Entrapment and Outrageous Government Conduct

The Sixth Circuit has broadly denied defendants ground for creating an "outrageous government conduct" defense predicated on "due process."  See United States v. Tucker, 28 F. 3d 1420 (6th Cir. 1994).  This Circuit has recognized that a defense "based solely upon an objective assessment of the government's conduct in inducing the commission of crimes" is not available to a defendant whose defense

sounds in inducement.  United States v. Warwick, 167 F.3d 965, 974 (6th Cir. 1999).

(quoting United States v. Tucker, 28 F.3d at 1426).  As a matter of law, "government

conduct [that] induces a defendant to commit a crime, even if labeled 'outrageous,' does

not violate that defendant's constitutional right of due process." Tucker, 28 F.3d at 1427.

This Circuit has repeatedly and consistently rejected the attempts of criminal defendants

to assert that the government's conduct in inducing them to commit a crime charged

was so outrageous as to deprive them of their constitutional rights.  See Warwick, 167

F.3d at 974; United States v. Rogers, 118 F.3d 466, 473 (6th Cir.1997) (finding that a

defense that sounds in inducement is limited to entrapment).

Pursuant to the decision in Tucker, the Sixth Circuit has determined that a

defense which sounds in inducement, as does Mr. Garth's and Mr. Hayes', is limited to

the defense of entrapment and its key element of predisposition:

> Defendants may not circumvent this restriction by couching their defense
> in terms of "due process" or "supervisory powers." Thus, we reject as a
> matter of law the theory upon which defendants based their motion to
> dismiss without regard to the particular facts of their case and without
> reaching the issue of whether or not those facts can properly be
> characterized as "outrageous."

Taylor at 1428.

The Sixth Circuit, further, recognizes entrapment as a limited defense, noting that

"because entrapment and predisposition are ordinarily questions for the jury, Mathews

v. United States, 485 U.S. 58, 63 (1988), the line drawn by Congress and articulated by

the Supreme Court ensures that the jury, as the traditional "defense against arbitrary

law enforcement," Duncan v. Louisiana, 391 U.S. 145, 156  (1968), operates as the

ultimate check on abuses of executive power.

21

In <u>Tucker</u>, the Sixth Circuit broadly noted that to "warrant dismissal before trial on the ground that the defendant was entrapped as a matter of law, this court has held that "the undisputed evidence must demonstrate a 'patently clear' absence of predisposition."  <u>United States v. Harris</u>, 9 F.3d 493, 498 (6th Cir.1993) ( quoting <u>Barger</u>, 931 F.2d at 366)."  <u>Id</u>. at 1428-29.  In analyzing a claim of entrapment as a matter of law, this Circuit has previously identified five relevant factors.  Specifically, the Courts are to look to: 1) the character or reputation of the defendant, including any prior criminal record; 2) whether the suggestion of the criminal activity was initially made by the government or another; 3) whether the defendant was engaged in the criminal activity for profit; 4) whether the defendant evidences reluctance to commit the offense which was overcome by government inducement or persuasion; and, 5) the nature of the inducement or persuasion supplied by the government. <u>See</u> <u>McLernon</u>, 746 F.2d 1098at 1112 (6th Circuit 1984).

The "undisputed" evidence in the record, taken in the light most favorable to the government, does not demonstrate a "patently clear" absence of predisposition on the part of Mr. Garth, Mr. Reese, Mr. Hampton, or Mr. Hayes.  <u>Id</u> at 498.  As to the defendants' "character or reputation", it is undisputed that the defendants each possessed multiple felony drug convictions and, as in the cases of Mr. Garth and Mr. Hayes, felony convictions for aggravated assault and robbery.  Which party initiated the suggestion of criminal activity is disputed, with the government contending ATF learned of the practice of Mr. Reese and Mr. Hampton to engage in "home invasion" type robberies of drugs, from a confidential informant.  Mr. Reese maintains the confidential informant "lured", "enticed", and "lobbied" him, while the ATF Special Agent "convinced",

"pressed" and "urged" in seeking Mr. Reese's participation.  There appears in the record no evidence of reluctance on the part of the defendants to engage in this endeavor. Further, the undisputed evidence indicates the nature of the inducement or persuasion of the defendants was profit, and not the use of extraordinary appeals, threats or pressure to induce any one of the defendant's action when compared to cases in which Courts have found such measures improper.  See Jacobson v. United States, 503 U.S. 540 (1992); McLernon, 746 F.2d at 1113-14.

Where, as here, an agent offers the opportunity to obtain illicit drugs, and the opportunity is seized, the Supreme Court recognizes, "the entrapment defense is of little use because the ready commission of the criminal act amply demonstrates the defendant's predisposition."  Jacobson v. United States, 503 U.S. 540, 550 (1992).   As the record does not reveal a "patently clear" absence of predisposition, the question of entrapment must be resolved by the jury.

## C. Sufficiency of Evidence of a Conspiracy

Mr. Reese and Mr. Garth challenge the sufficiency of the evidence regarding the conspiracy charge by noting the well settled rule that, "[p]roof of an agreement between a defendant and a government agent or informer will not support a conspiracy conviction."  United States v. Pennell, 737 F.2d 521, 536 (6th Cir. 1984).  (Doc. 30, p. 3; Doc. 33, p. 7).  Mr. Reese maintains that any conspiracy existed only between himself and the government agent, which is insufficient to establish a conspiracy under the holding in Pennell.  (Doc. 30).  Mr. Garth contends that his only connection to the events was his "mere presence" and, as such, his brief conversation with Special Agent Gomez

23

aka "Lokito", prior to his arrest, provides insufficient evidence to establish a conspiracy. (Doc. 33).

While the government does not address the defendants' sufficiency contention, the rule that government agents do not count as co-conspirators is limited to situations in which the conspiracy involves *only* one defendant and a government informer. United States v. Hayden, 68 Fed. Appx. 530, 532 (6th Cir. 2003); see also United States v. Giry, 818 F.2d 120, 126 (1st Cir. 1987).  Although recorded conversations between a defendant and an informer or agent cannot establish a conspiracy, they may be used as evidence of a conspiracy between a defendant and other conspirators.  See United States v. Deitz, 577 F.3d 672, 681 (6th Cir. 2009) (finding that while Dilts's status as a government agent prevented the government from proving the existence of a conspiracy solely between Dilts and defendant Deitz, the transactions and conversations between the two men were properly considered as evidence of a conspiracy existing among Deitz and other conspirators).;   United States v. Musick 291 Fed. Appx. 706, 730 (6th Cir. 2008);  United States v. Keeler, 285 Fed. Appx. 262, 266, fn. 1 (6th Cir. 2008).  See also United States v. Nelson-Rodriguez, 319 F.3d 12, 39 (1st Cir.2003) (recognizing that "[w]hen there are at least two 'true' coconspirators, the involvement of a government agent or informant does not defeat the true conspirators' culpability").

Accordingly, the Motions to dismiss by Mr. Garth and Mr. Reese will be denied.

**D.    Mr. Hampton's Separate Motion to Preclude Sentencing Entrapment.**

In a separate motion Mr. Hampton moves to preclude any sentence enhancement resulting from the calculation of the amount of the cocaine involved in this "home invasion" –  20 KG of cocaine was the expected net proceeds to be divided among the four defendants and "Lokito."  (Doc. 37, Hampton Motion to Preclude Sentence Enhancement).  Mr. Hampton avers that the 20 kilogram amount was arrived at by the government agent "Lokito" "solely for the purpose of sentence manipulation so that these "bad guys" would be sure to face life sentences.

This Circuit has consistently rejected sentencing entrapment as a consideration for either dismissal, or in the sentencing phase of a conviction.  In United States v. Gardner, 488 F.3d 700, 717 (6th Cir. 2007), the Circuit Court noted that neither they, "nor the Supreme Court officially has recognized the theory of sentencing entrapment," relying upon a litany of cases.  See Sosa v. Jones, 389 F.3d 644, 648-49 (6th Cir. 2004) ("Mr. Sosa has pointed to no Supreme Court precedent that 'clearly establishes' a federal prohibition of sentencing entrapment.") (citing Sorrells v. United States, 287 U.S. 435, 450 (1932)).  See also United States v. Jones, 102 F.3d 804, 809 (6th Cir. 1996) ("While other circuits have recognized sentencing entrapment, this circuit has never acknowledged sentencing entrapment as a valid basis for a downward departure under the guidelines.");  United States v. Nanez, 168 Fed. Appx. 72, 77 (6th Cir. 2006) ("Sentencing entrapment is a legal theory that has been recognized by neither this court nor the United States Supreme Court.").

Nevertheless, while this Circuit has never formally accepted the theory of

25

"sentence entrapment," a line of unpublished cases has assumed, without deciding, that if the facts of a case demonstrate that the government manipulated or otherwise entrapped the defendant, for the purpose of increasing his or her sentence, the defendant may be entitled to relief.  <u>See</u>, e.g., <u>United States v. Brown</u>, 110 F.3d 65 (Table), No. 95-6683, 1997 WL 159372, at *2 (6th Cir. Apr. 3, 1997) (reasoning that sentence manipulation " 'would certainly provide a fundamental fairness defense against the higher sentence.' ") (quoting <u>United States v. Sivils</u>, 960 F.2d 587, 598-99 (6th Cir.), cert. denied, 506 U.S. 843 (1992)); <u>United States v. Wright</u>, 48 F.3d 1220 (Table), No. 93-4228, 1995 WL 101300, at *2 (6th Cir. Mar. 9, 1995) ("[W]e believe that if there is such an animal as 'sentencing entrapment,' it can only exist in a habitat where there is no predisposition to do the thing that results in the higher sentence.") (citation omitted); <u>United States v. Clark, </u>12 F.3d 215, (Table), No. 93-1089, 1993 WL 524237, at *2 (6th Cir. Dec. 15, 1993) ("This Court has recognized that there may be circumstances under which concepts of fundamental fairness would preclude the police from increasing a defendant's sentence by manipulating the quantity of drugs with which the defendant was involved.").

In <u>Brown</u>, the Court described sentencing entrapment as "outrageous official conduct [which] overcomes the will of an individual predisposed only to dealing in small quantities for the purpose of increasing the amount of drugs ... and the resulting sentence of the entrapped defendant.' " <u>Brown</u>, 1997 WL 159372, at *2 (quoting <u>United States v. Barth</u>, 990 F.2d 422, 424 (8th Cir.1993).  This Court's inquiry, then, focuses on whether the defendant is "predispo[sed] to do the thing that results in the higher sentence."  <u>United States v. Fears</u>, 991 F.2d 796 (Table), No. 92-3459, 1993 WL 94303,

26

at *3 n. 3 (6th Cir.), <u>cert. denied</u>, 510 U.S. 894 (1993).

As a legal matter, this motion raises a question denied any purchase in this Circuit.  However, as a factual matter, as with the larger question of entrapment raised by co-defendants, the evidence of whether Mr. Hampton was predisposed to engage in the crime of which he is accused is a question for the jury.  Accordingly, Mr. Hampton's Motion to Preclude Sentencing Enhancement will be denied.

### **Motions for Severance**

None of the defendants dispute they were properly joined with their co-defendants in the indictment, pursuant to Federal Rule of Criminal Procedure 8(b). Three of the defendants however, believe the circumstances of this case warrant severance, pursuant to Federal Rule of Criminal Procedure 14(a).  Defendants Reese, Garth, and Hayes each move for separate trials.  (Docs. 29, 34, 32).

Mr. Reese maintains, as does Mr. Hayes, that post-arrest statements made by Mr. Hampton and Mr. Hayes would, if introduced into evidence, prevent them from exercising their right to confrontation in violation of the Constitution's Sixth Amendment and the Supreme Court's decision in <u>Bruton v. United States</u>, 391 U.S. 123 (1968). (Doc. 29).  Relying on <u>Bruton</u> and <u>Crawford v. Washington</u>, 541 U.S. 36 (2004), the defendants, further, argue that severance is necessary because the admission into evidence of any statements made by co-defendants to ATF agents would violate the Sixth Amendment right to confrontation of witnesses.  Mr. Hayes also argues that non-testimonial statements by Mr. Reese and Mr. Hampton necessitate severance.  Finally, Mr. Hayes maintains that his anticipated antagonistic defense requires severance.

27

Upon the strength of the Bruton decision, Mr. Garth contends that a joint trial will harm his Sixth Amendment right to confrontation given the post-arrest statements of Mr. Hampton and Mr. Hayes.

The government opposes the motions for severance predicated on the decisions in Zafiro v. United States, 506 U.S. 534 (1993), Richardson v. Marsh, 481 U.S. 200 (1987), and Crawford v. Washington, 541 U.S. 36 (2004). (Doc. 46).  The government contends that it does not intend to offer into evidence at trial any confession by co-defendants that would violate the Bruton rule.  By redacting any confessions by non-testifying co-defendants, to comply with Bruton, the government maintains the statements will be sufficient to satisfy the Sixth Amendment and Bruton rule.

After reviewing the record, the Court concludes that for the reasons discussed below, and with the government's proposed curative precautions, all of the defendants' motions for severance should be denied.

Rule 14(a) provides that if the joinder of offenses or defendants in an indictment appears to prejudice a defendant, the Court in its discretion may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice may require. There is a preference for joint trials of defendants who are indicted together.  Zafiro v. United States, 506 U.S. 534, 537 (1993); United States v. Cobleigh, 75 F.3d 242, 247 (6th Cir. 1996); United States v. Brenig, 70 F.3d 850, 852-53 (6th Cir. 1995).  Federal courts strongly favor joint trials of defendants who are indicted together because it promotes judicial efficiency and serves the interests of justice by avoiding the inequity of inconsistent verdicts.  Zafiro, 506 U.S. at 537; Brenig, 70 F.3d at 852-53.  The jury is presumed to be capable of following the Court's instructions, sorting out the evidence,

28

and giving separate consideration to each charge against each individual defendant. United States v. Walls, 293 F.3d 959, 966 (6th Cir.2002).

A strong policy presumption exists in favor of joint trials for co-defendants when the criminal charges result from the same acts and will be proved by the same evidence.  United States v. Critton, 43 F.3d 1089, 1098 (6th Cir. 1995); United States v. Moore, 917 F.2d 215, 220 (6th Cir. 1990).  This presumption is even more fundamental when, as here, the defendants are charged with joint participation in a conspiracy or common scheme.  United States v. Cope, 312 F.3d 757, 780 (6th Cir. 2002); United States v. Weiner, 988 F.2d 629, 634 (6th Cir. 1993).

Courts in this Circuit grant a severance of trials only if there is proof of a serious risk that a joint trial would compromise a specific trial right of a defendant, or prevent the jury from making a reliable judgment about a defendant's guilt or innocence. Zafiro, 506 U.S. at 539; United States v. Delgado, 350 F.3d 520, 526 (6th Cir. 2003); Cope, 312 F.3d at 780; Walls, 293 F.3d at 966; United States v. Long, 190 F.3d 471, 476 (6th Cir. 1999).  Further, this Circuit recognizes that defendants, who are indicted together, do not have a right to severance and separate trials simply because they may have a better chance of acquittal if they are tried alone.  United States v. Ross, 339 F.3d 483, 493 (6th Cir. 2003); Long, 190 F.3d at 476; United States v. Welch, 97 F.3d 142, 148 (6th Cir. 1996); Brenig, 70 F.3d at 853.  Finally, the precedent in this Circuit indicates that a defendant is not entitled to severance of trials merely because the incriminating proof is greater against a co-defendant. Id.

To obtain a severance, the defendants bear the burden of showing factually specific and compelling prejudice that will mislead or confuse the jury.  Welch, 97 F.3d

at 148; <u>Cobleigh</u>, 75 F.3d at 853; <u>Moore</u>, 917 F.2d at 221.  The Court finds that the

defendants have not met their burden of showing prejudice and a need for severance of

trials.

Each defendant contends there are statements made by his co-defendants not

within the scope of the charged conspiracy, and the introduction of such statements into

evidence at trial would violate the right to confrontation of witnesses guaranteed by the

Sixth Amendment to the United States Constitution. Defendants rely on <u>Bruton</u> and

<u>Crawford</u>.  Citing <u>Bruton</u> and <u>Crawford</u>, the defendants further argue that severance is

necessary because the admission into evidence of any post-arrest statements made by

co-defendants to ATF agents or police officers would violate the Sixth Amendment right

to confrontation of witnesses.

In response, the government proposes to:

> introduce the statements of Hayes and Hampton without reference to any
> co-defendant by name; without using a symbol, blank space, or word such
> as "deleted," and without reference to what another co-defendant said to
> either of them.  <u>See</u> <u>Gray v. Maryland</u>, 523 U.S. 185 (1998).  The
> government is prepared to have each defendants' entire statement
> transcribed, with a line-by-line redaction of those statements which refer to
> another co-defendant by name, or that co-defendant's actions.  Each
> attorney may then review the redacted statement, and if there are still
> objections to the redacted statement, allow the Court to conduct a final
> review to redact any statements.  <u>See</u> <u>United States v. Sherlin</u>, 67 F.3d
> 1208 (6th Cir. 1995) and <u>United States v. Cobleigh</u>, 75 F.3d 242 (6th Cir.
> 1996).

(Doc. 46, pp. 17-18).

<u>Bruton</u> held that the admission of a non-testifying co-defendant's confession into

evidence at a joint trial may violate a defendant's Sixth Amendment right to be

confronted with the witnesses against her or him, even when the jury is instructed to

30

consider the confession only against the co-defendant who made the confession.  The

potential prejudice to the non-confessing defendant may not be dispelled merely by a

limiting jury instruction.  Bruton, 391 U.S. at 132; Cobleigh, 75 F.3d at 248.  The Bruton

rule rests on the concern that a non-testifying co-defendant's confession can be so

"powerfully incriminating" that the jurors may be unable to refrain from attributing it to

the non-confessing defendant as well.  Richardson v. Marsh, 481 U.S. 200 at 207, 107.

Bruton's "narrow exception" to the almost invariable legal principle that jurors are

presumed to be capable of following and complying with the Court's instructions applies

only when the non-testifying co-defendant's confession expressly implicates the

defendant as his or her accomplice or coconspirator in the crime.  Richardson, 481 U.S.

at 208; Cobleigh, 75 F.3d at 248.  In Marsh, the confession of a non-testifying co-

defendant was properly redacted to omit any reference at all to the defendant.  The

confession only became incriminating to the defendant when it was linked with other

evidence at trial.  Marsh, 481 U.S. at 208.  The Richardson Court approved the

redaction and found that Bruton was distinguishable because the redacted co-

defendant's confession in Richardson did not expressly implicate the defendant as an

accomplice.  Thus, the Richardson Court held that the Confrontation Clause in the Sixth

Amendment and the Bruton rule are not violated by the admission of a non-testifying co-

defendant's confession with a proper limiting instruction to the jury when the confession

is redacted to eliminate not only the defendant's name, but all references to the

defendant's existence. Richardson, 481 U.S. at 208; accord Cobleigh, 75 F.3d at 248;

see also Gray v. Maryland, 523 U.S. 185 (1998) (Use of redacted statements at joint

trial violates the Bruton rule where the defendant's name is replaced with an obvious

31

blank space, a word such as "deleted," a symbol, or other similarly obvious symbols of alteration).

Further, a confession or admission by a defendant is admissible against him or her pursuant to Fed. R. Evid. 801(d)(2)(A).  A defendant's own admission may be admitted against her or him under Rule 801 which is not affected by Bruton.

Both Mr. Garth and Mr. Hayes maintain that statements made by Mr. Reese and Mr. Hampton, prior to the latter two defendants' arrest, warrant severance.  These statements were either recorded conversations with Mr. Reese, Mr. Hampton and the undercover agent, or were statements made to the agent by Mr. Reese or Mr. Hampton during face-to-face meetings between the three individuals.  Whether these statements warrant severance depends upon whether they are testimonial statements introduced by the government against the accused when he or she does not have an opportunity to cross-examine the maker of the statement.  Crawford v. Washington, 541 U.S. 36 (2004).

In Crawford, the Supreme Court held that testimonial out-of-court statements by witnesses that are offered against the accused to establish the truth of the matter asserted are barred by the Sixth Amendment's Confrontation Clause and cannot be introduced into evidence at trial, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness.  Id. at 59, 68;  United States v. Cromer, 389 F.3d 662, 671 (6th Cir. 2004).  The Crawford Court determined that where testimonial statements are involved, the Framers of the Constitution did not intend to leave an accused's right under the Sixth Amendment to confront his accusers "to the vagaries of the rules of evidence, much less to amorphous notions of 'reliability.' '

Crawford, 541 U.S. at 61.  Crawford does not comprehensively define what is

"testimonial."  At a minimum, the term "testimonial" applies to "prior testimony at a

preliminary hearing, a grand jury, or at a former trial; and to police interrogations."  Id. at

68.[5]

      For Crawford to apply, the out-of-court statement must be testimonial in nature.

Davis v. Washington, 547 U.S. 813, 823 (2006) (Confrontation Clause is simply not

implicated by the introduction of non-testimonial hearsay).  If the out-of-court statement

is not testimonial, then the Sixth Amendment's Confrontation Clause does not bar its

admission into evidence so long as the statement falls within a firmly rooted hearsay

exception or contains particularized guaranties of trustworthiness.  United States v.

Saget, 377 F.3d 223, 230 (2nd Cir. 2004) (applying Ohio v. Roberts, 448 U.S. 56 (1980)

to non-testimonial out-of-court statements in the wake of Crawford ).  For instance,

casual out-of-court statements to a friend or acquaintance, as were those between Mr.

Reese, Mr. Hampton and "Lokito," are not testimonial.  Crawford, 541 U.S. at 51 ("An

accuser who makes a formal statement to government officers bears testimony in a

---

[5]Crawford, however, did not overrule Bruton and its progeny.  See e.g.,
United States v. Lung Fong Chen, 393 F.3d 139, 150 (2nd Cir. 2004) (there was
no Crawford problem because Crawford did not overrule Richardson or expand
the holding of Bruton, and the defendant's statements were not admitted against
the co-defendants); United States v. Vega Molina, 407 F.3d 511, 518-21 (1st Cir.
2005) (the admission of the defendant's confession, through an agent's testimony,
did not violate Bruton ); United States v. Ramos-Cardenas, 524 F.3d 600, 609-610
(5th Cir. 2008) ("while Crawford certainly prohibits the introduction of a co-
defendant's out-of-court testimonial statement against the other defendants in a
multiple-defendant trial, it does not signal a departure from the rules governing the
admittance of such a statement against the speaker-defendant himself, which
continue to be provided by Bruton, Richardson, and Gray" ); United States v.
Williams, 429 F.3d 767, 773 n. 2 (8th Cir. 2005) (noting that Crawford did not
overrule Bruton and its progeny).

sense that a person who makes a casual remark to an acquaintance does not.").

The evidence suggests that pre-arrest statements made by the defendants during the course of the conspiracy were not testimonial in nature. Defendants could not reasonably expect their recorded statements, uttered during the conspiracy, to be used against them in a prosecution. See United States v. Johnson, 581 F.3d 320 (6th Cir. 2009). Such out-of-court, non-testimonial co-conspirator statements are not regarded as hearsay, but are admissible pursuant to Fed. R. Evid. 801(d)92)(E). Rule 801(d)(2)(E) is not affected by Confrontation Clause of the Sixth Amendment, Bruton, and Crawford. See United States v. Inadi, 475 U.S. 387, 399-400 (1986); United States v. Salgado, 250 F.3d 438, 450 (6th Cir.2001). Statements made by a defendant in furtherance of a conspiracy are not by their nature testimonial for purposes of applying Crawford. Crawford, 541 U.S. at 56.

Statements made in furtherance of a conspiracy are not made in circumstances in which an objectively reasonable person would anticipate or understand that the statements would be used by law enforcement authorities to investigate and prosecute a crime. A conspirator who makes a statement in furtherance of a conspiracy does not intend to bear testimony against a coconspirator. Severance cannot be predicated upon the governments use of such admissible statements.

Relying upon Rule 14,[6] Mr. Hayes, further, argues for severance predicated upon

---

[6]Federal Rule of Criminal Procedure 14(a) provides: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a).

an anticipated trial defense that would be antagonistic to his co-defendants.  (Doc. 32).

Mr. Hayes maintains that the "core" of his defense will be in conflict with the "core

defense" of Mr. Reese, Mr. Hampton, and Mr. Garth.

However, antagonistic defenses alone are not enough to warrant severance; the

defendant must show that the antagonistic defenses are likely to mislead or confuse the

jury.  United States v. Critton, 43 F.3d 1089, 1098 (6th Cir. 1995); United States v.

Weiner, 988 F.2d 629, 634 (6th Cir.), cert. denied, 510 U.S. 848 (1993).  Mr. Hayes has

not shouldered that evidentiary burden.

The Supreme Court's decision in Zafiro affirms the discretionary nature of Rule

14.  In that case, the Supreme Court was presented with the question of whether Rule

14 required "severance as a matter of law when co-defendants present 'mutually

antagonistic defenses.' "  Zafiro, 506 U.S. at 535.  The Court answered in the negative,

stating, "[m]utually antagonistic defenses are not prejudicial per se.  Moreover, Rule 14

does not require severance even if prejudice is shown; rather, it leaves the tailoring of

relief to be granted, if any, to the district court's sound discretion."  Id. at 538-39.

Affording the district court this discretion serves to uphold the "strong preference in the

federal court system for jointly indicted defendants to be tried together."  United States

v. Sherlin, 67 F.3d 1208, 1215 (6th Cir. 1995) (citing Zafiro, 506 U.S. at 537).  As the

Supreme Court recognized in Zafiro,  joint trials "promote efficiency and serve the

interests of justice by avoiding the scandal and inequity of inconsistent verdicts."  Zafiro,

506 U.S. at 537.

Because of this strong preference for joint trials, "a district court should grant a

severance under Rule 14 only if there is a serious risk that a joint trial would

compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id. at 539.  Accordingly, the Sixth Circuit has consistently held that "[i]n order to prevail on a motion for severance, a defendant must show compelling, specific, and actual prejudice from a court's refusal to grant the motion to sever." United States v. Lupo, 463 F.3d 445, 473 (6th Cir. 2006) (quoting United States v. Saadley, 393 F.3d 669, 678 (6th Cir. 2005)); accord Sherlin, 67 F.3d at 1215; United States v. Sivils, 960 F.2d 587, 594 (6th Cir. 1992).  The defendant bears this heavy burden because "jurors are presumed to follow the court's instruction to consider each defendant's case separately." Sherlin, 67 F.3d at 1215; see Zafiro, 506 U.S. at 539 ("[L]ess drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.").  The mere fact that the evidence against his co-defendant is more damaging than the evidence against him does not entitle a defendant to severance. E.g., United States v. Gardiner, 463 F.3d 445, 473 (6th Cir. 2006); United States v. Beverly, 369 F.3d 516, 534 (6th Cir.2004).  Severance should not be granted where the same evidence is admissible against all defendants, nor should it be granted where evidence is admissible against some defendants but not others.  Warner, 971 F.2d at 1196.

Despite this strong preference for joint trials, Rule 14 vests the Court with discretion to grant a severance or to "provide whatever other relief justice requires," if a defendant or the government is prejudiced by joinder.  Moreover, the Court's determination of prejudicial joinder questions is entitled to great deference upon review. United States v. Breinig, 70 F.3d 850, 853 (6th Cir. 1995).

A defendant is not entitled to severance simply because a separate trial may

36

enhance his chances for acquittal.  United States v. Warner, 971 F.2d 1189, 1196 (6th Cir.1992).  In this regard, the Sixth Circuit has consistently held that the assertion of different defenses by co-defendants does not alone require severance.  Id.; United States v. Kendricks, 623 F.2d 1165, 1168 (6th Cir. 1980); United States v. Vinson, 606 F.2d 149, 154 (6th Cir. 1979).  Moreover, the Sixth Circuit, in United States v. Breinig, reaffirmed the principle articulated in Zafiro that "a mutually antagonistic defense is not prejudicial *per se*, and Rule 14 does not mandate severance on that ground as a matter of law."  Breinig, 70 F.3d at 853.

In the present situation, the burden is on Mr. Hayes to show that an antagonistic defense would present a conflict "so prejudicial that defenses are irreconcilable, and the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty."  Warner, 971 F.2d at 1196.  The Court does not agree with Mr. Hayes' characterization of the evidence against his co-defendants, as providing guilt by association in the eyes of the jury.  Moreover, Mr. Hayes' argument is expressly foreclosed by the holding in Warner, that severance is not required where the proof may be stronger against one defendant than another.  More evidence, in the form of taped conversations and meetings with agents, gathered against Mr. Reese, Mr. Hampton, or Mr. Garth, than against Mr. Hayes, is not enough to show specific, actual or compelling prejudice.  Mr. Hayes' motion to sever on grounds of antagonistic defense will be denied.

### Motions for Pre-Trial Production

Mr. Hampton, Mr. Garth, and Mr. Hayes have submitted a number of pre-trial production requests which the Court will address seriatim.

37

### A. <u>Motions to Reveal Agreements</u>

Mr. Hampton (Doc. 38) and Mr. Hayes (Doc. 42) have each filed a motion requesting production of information regarding any agreements, promises, and inducements, entered into between the government and any prosecution witnesses. The government has responded (Doc. 46, pp. 29-32) that it will adhere to its obligation to disclose evidence which may be used to substantially impeach the credibility of government witnesses, and its obligation to reveal promises of leniency or immunity under <u>Giles v. Maryland</u>, 386 U.S. 66 (1967) and <u>Giglio v. United States</u>, 405 U.S. 150 (1972).  The government maintains it will provide the required information no later than one day before trial.  The government further contends that it will provide the defendants with criminal histories of any government witnesses prior to that witness' trial testimony.  The Court will grant the defendants' motions in so far as the government is ordered to reveal agreements, within the obligations laid down in <u>Giles</u> and <u>Giglio</u>, no later than one day before trial commences.

At this juncture, there is no specific evidence put forth regarding the need to reveal the identity of any confidential informants in this case.  Accordingly, this Court will not, now, make a determination over whether the need for disclosure of an informant's identity outweighs the government's claim of privilege in refusing to disclose the informant's identity.  That aspect of the defendants' motions that touches on the question of an informant's identity will be, therefore, held in abeyance.

### B. __Motions for Supplemental Discovery__

Pursuant to Brady v. Maryland, 373 U.S. 83 (1963) and Giglio, Mr. Garth (Doc.

36) and Mr. Hayes (Doc. 40) seek supplemental discovery specifically addressing:

> "1.  Attorney General Guidelines concerning ATF Undercover Operations
> including but not limited [to] [sic], policies, practices or criteria employed in
> undercover operations Written or recorded Statements.
>
> 2.  ATF guidelines, policies, practices, or criteria employed in undercover
> operations."

Mr. Garth maintains he "is entitled to determine if there was improper execution of the

undercover operation, written authorization from the united States Attorney to

manufacture a crime, whether this type of undercover operation was properly authorized

and adequately described in applicable guidelines or policies, whether the operation

was adequately supervised and whether the conduct of the undercover employees was

reviewed."  (Doc. 36).

In instances where defendants have requested production of an agency's

policies and procedures pursuant to Brady, Courts have required the person requesting

the production to demonstrate the manner in which the information is material to guilt or

innocence.  See United States v. Thevis, 84 FRD 47, 52 (1979).  Mere speculation will

not anchor such a request.  Wood v. Bartholomew, 516 U.S. 1, 6 (1995).  Instead, the

request must be specific and founded upon more than mere conjecture.  United States

v. Pickard, 787 F. Supp. 155, 160 (S.D. Ind. 1992).  A showing of materiality is that

evidence which will "enable the accused to substantially alter the quantum of proof in

his [or her] favor."  United States v. Marshall, 532 F.2d 1279, 1285 (9th Cir. 1976).

There is no assertion from Mr. Garth or Mr. Hayes that ATF policies and

39

procedures, what they were and whether or not they were adhered to, had material bearing on their individual guilt or innocence.  Further, the requests are neither specific, material, nor reasonable and, instead, appear to originate in speculation.  Accordingly, the Court will deny Mr. Garth and Mr. Hayes their respective requests for supplemental discovery.  (Docs. 36, 40).

### C.  Motions for Production of Brady/Giglio/Jenks Material

Mr. Garth (Docs. 19, 20, 21) and Mr. Hayes (Docs. 23, 24) have each filed motions requesting early production of impeachment evidence, favorable evidence, and Brady/Giglio and Jencks material.  In addition, Mr. Garth has moved to compel discovery.  (Doc. 22).

The government contends that it has complied with the requirements of Fed. R. Cr. P. 16(a) in providing Brady material to the defendants.  (Doc. 46, pp. 7-11).  The government notes that on 7 April 2009, counsel for each of the defendants was provided 32 DVDs containing recorded telephone calls and audio and video recordings of in-person meetings.  The government also notes that all counsel were provided with between 20 and 22 investigative reports detailing the events of the conspiracy.  On 10 July 2009, at the request of counsel, the government avers it mailed copies of all post-arrest statements made by defendants to all counsel.   The government further provided all counsel with transcripts of the 18 & 19 February 2009 meeting with Mr. Reese and Mr. Hampton, a transcript of the events of the day of arrest on 4 March 2009, as well as three further DVDs containing the Miranda warnings given to each defendant, photographs from the day of arrest, and a cellular phone log for three cellular phones

40

seized the day of arrest.  The phone log information was further augmented by the government to all counsel on 24 November 2009.

Upon review of the briefs before the Court, the requests by Mr. Garth and Mr. Hayes for early production of impeachment material and/or exculpatory evidence will be denied as moot.

Pursuant to the Jenks Act, and this Circuit's consideration of discovery production, the government does not have an obligation to produce a statement by a government witness in advance of trial or a witness' testimony.  See United States v. Algie, 667 F.3d 569 (6th Cir. 1982).  Additionally, as it appears from the evidence before the Court, defense counsel are in possession of "virtually all" investigative reports as of April 2009.  Accordingly, the motions by Mr. Garth and Mr. Hayes for early release of Jenks Act material will be denied.

The evidence before the Court suggests the government has provided to all counsel the discovery material requested in Mr. Garth's motion to compel.  (Doc. 22). Accordingly, the motion to compel is denied as moot.

### D.  Motions for Bill of Particulars

Mr. Hayes (Doc. 23) and Mr. Garth (Doc. 26) move, pursuant to Fed. R. Crim. P. 7(f), for a Court Order directing the government to produce a bill of particulars.  Both defendants seek specific dates upon which the alleged conspiracy began, as well as specific statements and conduct upon which the government will rely.  The government maintains (Doc. 46, pp. 4-7) that it need not be required to respond to a bill of particulars request used to obtain information which is evidentiary in nature.  Further,

41

the government maintains that the defendants' requests are not properly the subject of

a bill of particulars as providing such information would unduly restrict the government's

proof at trial and unnecessarily disclose the identity of the government's witnesses.  See

United States v. Wilson, 565 F. Supp. 1416, 1438-39 (DCNY 1983).

Finally, as the government avers in its briefing before the Court, the defendants

have been provided the information requested.  According to the government, the

defendants have received a copy of every investigative report of any defendant's

conduct, dates upon which meetings or telephone calls were placed, recordings of

meetings and conversations, and any statements of all defendants.  Accordingly, the

motions by Mr. Hayes and Mr. Garth (Docs. 23, 26) for a bill of particulars will be denied

as moot.


**Conclusion**

Motions for suppression by Mr. Hayes (Doc. 31) and Mr. Garth (Doc. 35), as well

as Mr. Hampton's Motion to Join (Doc. 39), are denied.  Mr. Hayes' Motion to Join (Doc.

41), Mr. Garth's (Doc. 30) and Mr. Reese's (Doc. 33) Motion to Dismiss is granted, while

Mr. Hampton's Motion to Join (Doc. 39) is denied.  The motions to dismiss by from Mr.

Garth and Mr. Reese are denied.  Mr. Hampton's (Doc. 37) Motion to preclude

sentencing entrapment is denied.  Motions for severance from Mr. Reese (Doc. 29), Mr.

Garth (Doc. 34), and Mr. Hayes (Doc. 32) are denied.  Motions by Mr. Hampton (Doc.

38) and Mr. Hayes (Doc. 42) to reveal agreements are granted, in part, and held in

abeyance, in part, under the terms of this Order and Opinion.  Motions for Supplemental

Discovery from Mr. Garth (Doc. 36) and Mr. Hayes (Doc. 40) are denied.  Mr. Garth's

(Docs. 19, 20, 21) and Mr. Hayes' (Docs. 23, 24) Motions for impeachment material and/or exculpatory evidence is denied as moot.  Mr. Garth's (Doc. 22) motion to compel is denied as moot.  The Motions for Bill of Particulars from Mr. Hayes (Doc. 23) and Mr. Garth (Doc. 26) are denied as moot.

IT IS SO ORDERED.

    /s/Lesley Wells
UNITED STATES DISTRICT JUDGE

Date: 23 June 2010

43